Brenda J. **SANDERFER**, as Personal Representative of the Estate of Tony Clayton, Deceased, Plaintiff–Appellee,

v.

John F. **NICHOLS**, Individually and in his own capacity as Oakland County Sheriff, Defendant,

Nancy Jansen, Defendant–Appellant.

No. 94–1368.

United States Court of Appeals, Sixth Circuit.

Argued May 23, 1995.

Decided Aug. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 15, 1995.

**152**

Brunetta Brandy, Detroit, MI, James W. McGinnis (argued and briefed), Detroit, MI, for plaintiff-appellee.

John H. Dise, Jr., G. Gus Morris (argued and briefed), Dise & Gurewitz, Detroit, MI, for defendants.

Before: MILBURN and BATCHELDER, Circuit Judges; TODD, District Judge.*

BATCHELDER, Circuit Judge.

The defendant, Nancy Jansen, appeals the district court's denial of her summary judgment motion based on qualified immunity. The plaintiff's decedent, Tony Clayton, died while in the Oakland County, Michigan, jail and the plaintiff brought a 42 U.S.C. § 1983 action against defendants Oakland County, John Nichols, individually and as Sheriff of Oakland County, and Jansen, as a clinical health specialist at the jail.[1]   The district

---

\* The Honorable James Dale Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

1.   The procedural history in this case is in fact considerably murkier than this statement would indicate.   The plaintiff did not name Jansen at all in the complaint.   Rather, the plaintiff named as defendants "County of Oakland, Oakland County Sheriff's Department, John Doe, Jane Roe, and John F. Nichols, Individually and in his capacity as Oakland County Sheriff, Jointly and Severally."   Paragraph 4 of the Complaint identifies "Jane Roe" as being "employed by the Defendant County of Oakland, as a nurse dealing with prisoners in the custody of the Oakland County Sheriff, and at all times pertinent ... acting within the scope of her employment for the County of Oakland."   Nancy Jansen was substituted for Jane Roe by order of the district court

in conjunction with the court's order granting the county's motion for summary judgment and denying summary judgment to Jansen.   The order substituting Jansen as a party defendant does not specify the capacity in which she is sued, and ordinarily, when the complaint in a § 1983 action does not specify that a defendant is sued in her individual capacity, we have held that such a defendant has been sued in her official capacity only.   *See Wells v. Brown*, 891 F.2d 591 (6th Cir.1989).   However, because the district court ordered Jansen substituted as a party defendant but denied her summary judgment on qualified immunity grounds while granting summary judgment to the county, we will assume, for purposes of this action, that the district court's intent was to substitute Jansen in her individual capacity.

court granted the defendants' motion for summary judgment as to Oakland County only. The plaintiff subsequently dismissed defendant Nichols in his individual capacity.

## I.

On June 10, 1991, Clayton was admitted as an inmate at the Oakland County Jail. During a routine medical screening, Clayton filled out a questionnaire and reported a history of asthma, for which he took medication, and high blood pressure. This information was entered into Clayton's record on the jail computer. Clayton also met with his social worker. She filled out one sick call slip because Clayton had not received his asthma medication and, later, a second call slip because Clayton had not been to the clinic for his asthma and had developed a cold.

On June 21, 1991, Clayton complained of breathing trouble. A nurse, Barbara Draper, took his vital signs and found a normal blood pressure of 100/60. Clayton told Draper that he had asthma and that he had not taken medication since June 1, 1991. The nurse indicated in her report that Clayton should be seen in sick call. Also on June 21, 1991, Clayton received a routine physical examination. His vital signs revealed a normal blood pressure of 102/70 and he did not mention that he had high blood pressure.

Clayton reported to the jail clinic on June 24, 1991 and was examined by Jansen. Clayton stated that he suffered from asthma and had not taken his medication for a month, and that he was coughing up green phlegm and suffered from fever and nasal congestion. Clayton, however, did not mention his high blood pressure. Jansen examined Clayton,

took his vital signs, and found a normal blood pressure of 108/74 and a pulse of 76. Jansen did not review Clayton's medical history records that disclosed the June 10, 1991 medical screening at which Clayton reported that he had high blood pressure. Jansen diagnosed Clayton's condition as bronchitis and prescribed antibiotics for the bronchitis and medication for his asthma, but did not refer him to a physician. Dr. Vettraino, the jail's medical consultant, checked and approved Jansen's diagnosis and request for medication, but did not see Clayton or investigate his medical history.

On July 7, 1991, Clayton collapsed and died while playing basketball in the jail. The medical examiner's autopsy listed Clayton's cause of death as hypertensive and arteriosclerotic cardiovascular disease; the report indicated blockage of the left coronary artery of approximately fifty percent.

## II.

A district court's order denying summary judgment that is based on qualified immunity and turns on an issue of law is immediately appealable as a final judgment under the collateral order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).[2] This Court reviews a district court's ruling on qualified immunity *de novo*. *Mackey v. Dyke*, 29 F.3d 1086, 1093 (6th Cir.1994).

A government official performing a discretionary function is entitled to qualified immunity from suit for civil damages unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

---

2. We note that the Supreme Court's recent clarification of the appealability of qualified immunity orders in *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), does not impact this case. In *Johnson*, the district court had denied the defendants' summary judgment motion based on qualified immunity because "sufficient circumstantial evidence" supported the plaintiff's version of events, which, if true, created potential liability on the part of the defendants. *Id.* at ——, 115 S.Ct. at 2154. On appeal, the defendants merely argued that "not a scintilla of evidence" supported the plaintiff's version. *Id.* The Supreme Court held that a

defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2159. Although the district court in the case at bar phrased its denial of qualified immunity in terms of finding more "than a scintilla" of evidence supporting a constitutional violation by Jansen, this order is immediately reviewable because, as discussed below, the plaintiff's version of events, regardless of the sufficiency of the supporting evidence, does not state a claim for such a violation.

*v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Therefore, to survive a qualified immunity defense, the plaintiff must show that he "has been deprived of a right 'secured by the Constitution and laws.' " *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979); *Lewellen v. Metropolitan Gov't of Nashville and Davidson County,* 34 F.3d 345, 347 (6th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 903, 130 L.Ed.2d 787 (1995).

■ In this case, the plaintiff alleges that Jansen was deliberately indifferent to Clayton's medical needs. Deliberate indifference to a prisoner's serious illness or injury constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment and, therefore, states a cause of action under § 1983.[3] *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Deliberate indifference, however, does not include negligence in diagnosing a medical condition. *Id.* at 106, 97 S.Ct. at 292.

■ The plaintiff claims that Jansen failed to review Clayton's medical history, failed to discover his hypertension, failed to recognize that he should have been examined by a cardiologist, failed to restrict his activities to those appropriate for someone with a heart condition, and prescribed inappropriate medication, and that as a direct result of this deliberate indifference to his medical needs, Clayton died.[4] In denying summary judgment, the district court found that some evidence of deliberate indifference existed, stating that "I think there is more here in the

affidavit and the fact that the man did die because of a heart condition than a scintilla."

The district court relied on this Court's decision in *Hill v. Marshall,* 962 F.2d 1209 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993), which upheld a jury finding against a deputy prison superintendent in part because "deliberate indifference" included "strong proof of a pervasive pattern of indifference to the inmates' medical needs generally." *Id.* at 1213–14. *Hill,* however, involved a deputy superintendent of treatment who repeatedly failed to review and respond to the medical needs of the prison population. *Id.* at 1214. We held that the superintendent's consistent abdication of responsibility was "so likely to result" in a constitutional deprivation that he was deliberately indifferent. *Id.* In the case at bar, however, there is no evidence whatever that Jansen repeatedly failed to respond to prisoners' medical needs. Indeed, there is no evidence that Jansen repeatedly did or did not do anything. The evidence as to Jansen is confined to her single encounter with Clayton on June 24, 1991, the facts surrounding her examination of him, and her diagnosis of and prescribing medication for his condition on that date. Therefore, "strong proof of a pervasive pattern of indifference" simply was not present.[5]

The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm. *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970,

---

3. Although Clayton was a pretrial detainee at the time of his death, this Court has noted that "the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985); *see Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979).

4. Essentially, the plaintiff's claim collapses into the assertion that Jansen's failure to check Clayton's medical history records constitutes deliberate indifference. So long as Jansen was not deliberately indifferent in this act, then her subsequent actions, including her misdiagnosis and

her failure to refer Clayton to a physician, are not actionable either.

5. The plaintiff relies heavily on *Boretti v. Wiscomb,* 930 F.2d 1150 (6th Cir.1991). *Boretti* is distinguishable because it involved a prisoner who repeatedly requested help from an unresponsive nurse. *Id.* at 1152. The prisoner in *Boretti* was in recovery from a gunshot wound and required a prescribed plan of treatment, which the nurse essentially refused to administer. *Id.* at 1154. Further, as this Court noted in *Boretti,* the Supreme Court in *Estelle* "specifically indicated that interruption of a prescribed plan of treatment could constitute a constitutional violation." *Id.*

1979, 128 L.Ed.2d 811 (1994). Deliberate indifference, the Court held, requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.; Brooks v. Celeste,* 39 F.3d 125, 128–29 (6th Cir.1994). The *Farmer* Court added that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* ——— U.S. at ——— — ———, 114 S.Ct. at 1982–83.

The record in this case simply does not contain facts from which the jury could conclude that Jansen was aware of facts from which she could and did draw the inference that her conduct posed a substantial risk of serious harm to Clayton. As Jansen points out, Clayton did not complain of hypertension and she examined Clayton and treated him with antibiotics for the respiratory symptoms of which he did complain. Additionally, Clayton's blood pressure was taken on three separate occasions in the three weeks before his death and each time it was in the low normal range. Jansen further emphasizes that there is no evidence in the record that Clayton had any symptoms of heart disease when she examined him or that the treatment she prescribed contributed to his death. Although there is some evidence in the record that Clayton had requested or had been referred for medical attention during the two weeks prior to his death but had not actually been seen by the clinic, there is no evidence that Jansen either was aware of or had any responsibility for this lack of medical attention.

While perhaps in hindsight Jansen *should* have checked Clayton's medical history records, her failure to do so is negligence at most. Jansen noted a number of Clayton's ailments, which did not indicate a heart condition, and made a diagnosis. Because Jansen obviously was not aware that Clayton was at a substantial risk of heart failure, she could not be "deliberately indifferent" to this risk when she made her diagnosis.

### III.

For the foregoing reasons, we **REVERSE** the district court's order denying summary judgment to defendant Jansen.