96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Daniel Price BOISTURE and Joanne Boisture, Plaintiffs-Appellees,
v.
Michigan State Trooper David SERVICE, # 723, Defendant-Appellant.
 No. 94-1605.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 93-72726; Patrick J. Duggan, Judge.
 E.D.Mich.
 REMANDED.
 Before: BATCHELDER and MOORE, Circuit Judges, and ENSLEN, District Judge.*
 BATCHELDER, Circuit Judge.
 
 
 1
 Michigan State Trooper David Service appeals from the denial of his motion for summary judgment based on a theory of qualified immunity. Because we conclude (1) that qualified immunity is not generally available as a defense to a factually supported charge that a police officer used excessive force during arrest in violation of an individual's Fourth Amendment rights, and (2) that Service does not demonstrate that his is one of those exceedingly rare or exceptional cases in which a departure from the general rule is warranted, we DISMISS this appeal for lack of jurisdiction.
 
 I.
 
 2
 Because this case is an appeal from Service's motion for summary judgment, we set forth the facts of this case in the light most favorable to Boisture, the non-moving party. FED.R.CIV.P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citations omitted).
 
 
 3
 On the evening of September 17, 1991, Service stopped Boisture for running a red light. As he approached Boisture's automobile, Service noticed a blue handicapped sticker prominently displayed on the windshield.
 
 
 4
 Service asked Boisture to produce his driver's license and proof of insurance. Noticing that Boisture was having difficulties in producing these items and detecting a moderate odor of alcohol, Service asked Boisture if he had been drinking. Boisture answered that he had had two beers.
 
 
 5
 Service ordered Boisture out of his automobile in order to conduct various field sobriety tests. Because of his handicap--Boisture has two prosthetic knee joints--Boisture had trouble quickly exiting his automobile, and once having done so, had some trouble walking.
 
 
 6
 Service ordered Boisture to do a "finger test." When Boisture performed the test twice, rather than the three times Service had ordered, Service said, "Hey, Stupid, I said three times." Service then asked Boisture to recite the alphabet. Before starting, Boisture warned Service that he would be unable to comply because of a speech impediment which manifested itself whenever he became nervous. Service instructed Boisture to stand on one leg, and to walk heel to toe in a straight line. Boisture explained that his handicap prevented him from performing these tests.
 
 
 7
 Because Boisture could not perform the field sobriety tests, Service asked him to submit to a preliminary breath test. Boisture refused, but offered to take the test if it was administered by an officer other than Service.
 
 
 8
 Service placed Boisture under arrest and ordered him to turn around and to stand against the patrol car. Before Boisture could do as he had been told, Service gave him a hard shove. There was no indication at the time of the shove that Boisture was acting in an uncooperative way, or was otherwise resisting arrest.
 
 
 9
 Service handcuffed Boisture. Boisture asked Service to help him get into the patrol car. Service refused, and stood by watching as Boisture slid into the back seat of the patrol car with great effort.
 
 
 10
 Service then drove Boisture to the Monroe County Jail. When they arrived, Boisture struggled for a few moments to get out of the car, while Service again impassively looked on. Because he was handcuffed, Boisture could not use his arms (as was his usual practice) in order to stand.[1] Boisture, therefore, asked Service for help, explaining:
 
 
 11
 Now just take the knee and push it back and bend it and then I'll lean over this way and we can get it out like that.... And just help. Just help get it back. Don't pull. Just help get it back.... Just help me, please.
 
 
 12
 Boisture went on to exhort Service, "Now take it easy. Take it easy because it hurts when you push it back." As Service took his leg, Boisture said, "Easy, easy, easy, easy." Service exclaimed, "Ah! Shit. Ah! Shit." Despite Boisture's pleas not to pull the leg, Service gave it a forceful yank, and one of Boisture's legs got caught on the patrol car door. Boisture's knee made a loud "pop" sound. Boisture said to Service, "Holy shit" or "Jesus, you're hurting me. You're hurting me." Service answered with even more force.[2]
 
 
 13
 When he had finished pulling Boisture from the automobile, Service dragged Boisture up a flight of stairs into the jail. Boisture fell on his knees twice along the way.
 
 
 14
 Another officer performed a breathalyzer test on Boisture. The test revealed that Boisture's blood alcohol content was within the legal limits. Boisture was released after several hours.
 
 
 15
 Medical records introduced into evidence indicated that Boisture contacted his knee surgeon within several days of the injury. Boisture's right knee became more painful after the incident with Service. Boisture soon had to have his entire right prosthetic knee replaced.
 
 
 16
 Both parties agreed upon an orthopedic surgeon, Dr. Sidney H. Goldman, as the only medical expert in the case. Dr. Goldman examined Boisture after the knee replacement surgery, and reviewed all of Boisture's relevant medical records. Dr. Goldman concluded that Boisture's injury was consistent with his account of the incident:
 
 
 17
 It is understandable that [Boisture] would require his hands to assist himself to stand up from a sitting position and when he was not allowed to use his hands it sounds to me as if the officer's abrupt handling of the right lower extremity did cause something to fail in the patient's prosthetic knee leading to revision arthroplasty shortly thereafter.[3]
 
 
 18
 Boisture filed a multi-count complaint arising out of his arrest by Service, alleging a cause of action under 42 U.S.C. § 1983 for violations of his Fourth, Eighth, and Fourteenth Amendment rights. Boisture also alleged various state law claims, including the state law torts of gross negligence, assault and battery, as well as violations of the Michigan Constitution and the Michigan Handicapper Civil Rights Act. MICH.COMP.LAWS ANN. § 37.1101 et seq. (West 1985).
 
 
 19
 On May 12, 1994, Service filed a motion for summary judgment, asserting, inter alia, a defense of qualified immunity. On May 23, 1994, the district court dismissed all of Boisture's claims except his excessive force and state law tort claims. In its ruling, the district court denied Service's qualified immunity defense, questioning whether such a defense should be available against a charge of excessive force.
 
 
 20
 An interlocutory appeal on the qualified immunity issue was taken pursuant to 28 U.S.C. § 1291 (1993) (" § 1291").
 
 II.
 
 21
 We begin and end our review with an inquiry into our jurisdiction pursuant to § 1291 to entertain the instant appeal. At least since the Supreme Court decided Mitchell v. Forsyth, 472 U.S. 511, 528 (1985), we have had jurisdiction under § 1291 and the "collateral order" doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), to hear the interlocutory appeal of a district court's order denying a defendant's motion for summary judgment where defendant was a public official asserting a defense of qualified immunity.
 
 
 22
 After the parties to this case filed their appellate briefs, however, the Supreme Court handed down Johnson v. Jones, 115 S.Ct. 2151 (1995), a case in which the Court clarified, and in the process, narrowed, the scope of our jurisdiction under Mitchell. In Johnson, the Court explained that Mitchell had permitted appellate courts to exercise jurisdiction over an immediate appeal of a district court's order denying a defendant's motion for summary judgment on a theory of qualified immunity only when "the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain facts showed a violation of 'clearly established' law." Johnson, 115 S.Ct. at 2155 (citing Mitchell, 472 U.S. at 528; Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Johnson Court answered the question Mitchell had not resolved, holding that § 1291, in conjunction with the Cohen doctrine, does not confer jurisdiction upon the appellate courts over the immediate appeal of a district court's order denying a defendant's qualified immunity-summary judgment motion when the district court bases its order solely upon the sufficiency of the evidence on the record to demonstrate that a genuine issue of material fact remains for trial. Id. at 2156. As the Court explained: "[T]he District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent was not a 'final decision' within the meaning of the relevant statute [§ 1291]." Id.
 
 
 23
 We have undertaken a thorough review of the record in the case sub judice in order to ascertain the basis for the district court's decision to deny Service's qualified immunity-summary judgment motion ("the motion"). The district court's explanation of its ruling on the motion, issued for the record from the bench, is hardly a model of clarity, but the basis for its ruling on Service's summary judgment motion is discernably clear.
 
 
 24
 The district court stated that it denied the motion because it was unable to preclude the possibility that the facts Boisture alleged established a violation of a clearly established right. Our jurisdiction of course does not turn on the phrasing of the district court's order. Christophel v. Kuklinsky, 61 F.3d 479, 485 (6th Cir.1995) (exercising interlocutory jurisdiction even though the district court's denial of defendants' motion for summary judgment was premised in part on the existence of a factual dispute where "the factual dispute [did] not affect defendants' right to qualified immunity"). If the plaintiff's allegations in the instant case could not establish a violation of his constitutional rights, we would not be deprived of interlocutory jurisdiction under Johnson. See Sanderfer v. Nichols, 62 F.3d 151, 153 n. 2 (6th Cir.1995) (holding that the court had jurisdiction under Johnson because "the plaintiff's version of the events, regardless of the sufficiency of the supporting evidence, [did] not state a claim for such a violation"). However, because we agree with the district court that material disputes of fact precluded the grant of summary judgment based on qualified immunity, this case is squarely within Johnson, and we are, therefore, required to dismiss the appeal for want of jurisdiction.
 
 
 25
 We note that beneath the conclusion that the facts as asserted by Boisture would preclude summary judgment on a theory of qualified immunity lies a serious legal error. In explaining its reason for denying the motion, the district court observed that, whether Service was entitled to qualified immunity turned on whether the facts in the case established that Service "was deliberately indifferent to the serious risk of physical harm to the Plaintiff, and whether or not his actions were 'intentional[ ]'...." As we read the record, the district court employed the standard for claimed violations of the Eighth Amendment's Cruel and Unusual Punishments Clause, U.S. CONST., Amend. VIII, see Farmer v. Brennan, 114 S.Ct. 1970, 1977 (1994) (setting forth the standard for Eighth Amendment violations), and not the Fourth Amendment standard for use of excessive force. See Graham v. Connor, 490 U.S. 386, 395 (1989) (identifying the Fourth Amendment and its "reasonableness" standard as the constitutional basis for pre-arrest excessive force claims).
 
 
 26
 The district court's application of the wrong legal standard does not, without more, confer interlocutory jurisdiction upon this Court. The district court denied Service's qualified immunity-summary judgment motion because it concluded that there remained for trial genuine issues of fact material to the determination of whether Service had violated Boisture's "clearly established" Eighth Amendment rights. The standard for judging a Fourth Amendment excessive force claim is hardly as rigorous as the Eighth Amendment standard the district court employed. Because the district court ruled as it did, that Boisture's alleged facts, if true, established that Service violated his "clearly established" Eighth Amendment rights, a fortiori, the same conclusion must hold true under the less rigorous Fourth Amendment excessive force standard. Therefore, since the district court based its ruling on the sufficiency of the evidence, we must DISMISS this interlocutory appeal, pursuant to Johnson, for lack of jurisdiction, and REMAND the case to the district court for further proceedings.
 
 
 
 *
 The Honorable Richard A. Enslen, Chief Judge United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 Boisture's artificial knees required him, in order to exit a car, to pull each knee up towards his chest and, using both arms, swing his legs out of the car door
 
 
 [2]
 Exactly what happened when Boisture attempted to get out of the patrol car at the station is difficult to describe. We have tried to capture what the parties noted for the record. We point out that the district court, too, had a difficult time attempting to visualize just what took place. As Boisture's lawyer explained to the district court: "[T]here are many things that the Court cannot judge simply by reading a transcript. Part of it has to be demonstrated visually." Indeed, Boisture's counsel attempted a visual display in the district court in order to enable that court better to understand the precise nature of what took place at the time that Boisture and Service arrived at the county jail
 
 
 [3]
 The Report of Dr. Goldman to which Boisture refers was admitted into evidence by the district court, but does not appear in the Joint Appendix