97 F.3d 1451
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kristopher FISHER, Plaintiff-Appellee,
v.
COCKE COUNTY, Defendant,
Tunney Moore, Individually; Blaine Hartsell, Individually;
Rick Russell, Individually; Calvin Russell, Individually;
Renea Sexton, Individually; Clifford Sane, Individually;
Jimmy Gowan, Individually; Mike Smith, Individually,
Defendants-Appellants.
 No. 95-5359.
 United States Court of Appeals, Sixth Circuit.
 Sept. 12, 1996.
 
 On Appeal from the United States District Court for the Eastern District of Tennessee, No. 93-00323; Tilson, Magistrate Judge.
 E.D.Tenn.
 REVERSED.
 Before: SILER and BATCHELDER, Circuit Judges; CARR, District Judge.*
 SILER, Circuit Judge.
 
 
 1
 In this prisoner civil rights case, the defendants appeal the denial of their motion for summary judgment on grounds of qualified immunity.[1] For the reasons stated hereafter, we REVERSE.
 
 I.
 
 2
 Cocke County, Tennessee, owns the Cocke County Jail. Tunney Moore was Sheriff of Cocke County when Fisher was incarcerated at the Cocke County Jail. After Moore took office, Cocke County adopted a policy and procedures manual that provides criteria for the classification of inmates according to propensities for violence and for the supervision and examination of inmates. Fisher introduced evidence that indicated that the Cocke County jailers did not comply with that manual and provided expert testimony regarding the insufficiency of the training of the jail staff.[2] Moore appointed defendant Blaine Hartsell as Chief Deputy. Rick Russell was a Deputy Sheriff and Chief Jailer. Deputy Sheriff Renea Sexton, Sergeant Clifford Sane, Deputy Sheriff Jimmy Gowan, Sergeant Calvin Russell, and Deputy Sheriff Mike Smith were jailers on duty during Fisher's incarceration.
 
 
 3
 On February 25, 1993, Spencer Hughes was placed into cell two of the Cocke County Jail, the same cell into which Fisher was later placed. Other inmates took his clothes and beat him intermittently for the next two days. Hughes stated that other inmates attempted to sexually assault him and that, on both of those days, he informed jailers of these incidents and that his requests to be moved from cell two were denied. Hughes and his father stated that his face was bruised. Hughes stated that he spoke with Sheriff Moore on February 28, 1993 and that Sheriff Moore stated that he would find out who was responsible for the injuries. Hughes did not inform anyone that Fisher had been beaten or that Fisher was in any danger. Hughes' complaints were not recorded in jail records.
 
 
 4
 On the morning of February 27, 1993, Fisher was arrested for leaving a store without paying for gasoline and incarcerated in cell two at the Cocke County Jail. At that time, Sexton and Russell were responsible for classification and placement of inmates. Russell placed Fisher in cell two. Fisher had no prior criminal history.
 
 
 5
 Cell two is designed to hold fourteen prisoners. Thirteen prisoners were incarcerated in cell two when Fisher was arrested and many of them had been charged with violent crimes. Cell two has solid walls and activity within it can be observed by entering it, looking through the open cell door, looking through a slot in the wall, or looking through two small windows. The entire cell can only be seen by someone who has entered the cell. Fisher was assigned to a bed in a small cell within cell two. That small cell had a locking door that separated it from the main cell but the door was left open during Fisher's incarceration.
 
 
 6
 On the day Fisher was incarcerated, between the time he was incarcerated and when breakfast was served, other inmates beat him and removed much of his clothing. After breakfast was served, jailers entered cell two and ordered Fisher and another inmate to clean the cell. Jailers entered the cell two other times between breakfast and lunch. Fisher did not report the loss of his clothes to the jailers during those checks.
 
 
 7
 During lunch, Fisher was told that he would be "running through the gauntlet" later that night. Fisher testified that jailers observed the cell three times between lunch and dinner by opening the door (but not entering). During that time, Fisher was tattooed by other inmates,[3] beaten, and forced unconscious from the deprivation of oxygen caused by other inmates squeezing his chest. Fisher testified that the other prisoners threatened to kill him if he told the guards of the tattooing. Fisher testified that "before supper" "there were no outside scars, from what [he] could see" in a mirror. Later, Fisher left cell two and called his father but did not tell his father or anyone else of the tattoo or other incidents. Fisher admitted that "[u]p to this point in time, there w[as] nothing that [he] was aware of from which the guards would know [he was] in any danger being in that cell."
 
 
 8
 After dinner, a guard entered the cell to distribute medication. Fisher testified that he did not recall whether guards checked the cell between dinner and when the lights in the cell were turned off. Fisher alleges that, after the lights were turned off, another inmate beat him, forced him to perform oral sex on inmates and sexually assaulted him while he was restrained by other inmates. Fisher alleges that there was no response to his screams for help during this time and that some of his screams were prevented by other inmates' placing their hands over his mouth.
 
 
 9
 The next day, Fisher left cell two to make a phone call and at least one jailer asked about his black eyes and facial swelling. Fisher testified that, out of fear, he told the jailer that these injuries had been caused by a fight before his incarceration and that "[e]verything was fine." Fisher made other phone calls that day. Hughes was removed from cell two so that the injuries he had suffered in the cell could be examined. Fisher testified that the Sheriff then entered cell two and threatened to withdraw prisoner privileges if "this crap didn't stop."[4] Fisher admitted that he "didn't ask the Sheriff when he was in the cell, or any of the other guards for medical treatment during the time" he was incarcerated, did not ask to be moved from cell two, and had no discussions with guards regarding the circumstances of his incarceration.
 
 
 10
 On appeal, Fisher contends that he and another inmate were forced to bite each other, drink urine, and masturbate in front of other inmates. Fisher's testimony, cited as proof of those claims, indicates only that Hughes was forced to do some of these things. Tommy Cureton, a jailer, testified that when he noticed Fisher's bruises and swelling, he took Fisher to Williams and Moore. Cureton testified that Fisher's request to be moved from cell two was denied. Fisher testified that he then "just basically slept ... the entire time that [he] was left there."
 
 
 11
 The Cocke County Sheriff's Department was informed of these events by the Cocke County district attorney after Fisher was released on March 3, 1993. Fisher testified that his father did not "observe" his two black eyes and a scratch on his cheek when they drove from Cocke County to Michigan after Fisher's release. Fisher testified that his sister was the first person he told of these events. His father stated that Fisher had visible injuries.
 
 
 12
 Fisher has not sought prosecution of his alleged assailants. He brought this action under 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Fourteenth and Eighth Amendments. The case was transferred to a magistrate judge by the consent of the parties.
 
 II.
 
 13
 This court has jurisdiction over a district court's denial of qualified immunity as it is a "final decision" for the purposes of 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). The magistrate judge determined that Fisher's allegations stated a claim for an Eighth Amendment violation. This court may review that legal determination. See Sanderfer v. Nichols, 62 F.3d 151, 153 n. 2 (6th Cir.1995) (holding that the district court's denial of summary judgment was immediately appealable because "the plaintiff's version of events, regardless of the sufficiency of the supporting evidence, does not state a claim for [an Eighth Amendment] violation") (citing Johnson v. Jones, 115 S.Ct. 2151, 2159 (1995)).[5] This court reviews de novo a district court's decision on qualified immunity. Mackey v. Dyke, 29 F.3d 1086, 1093 (6th Cir.1994).
 
 
 14
 Because the defendants were acting as government officials and were performing discretionary functions, they are entitled to qualified immunity unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Fisher alleges that the defendants violated his rights under the Fourteenth and Eighth Amendments. Fisher was a pretrial detainee while incarcerated in Cocke County. "[T]he eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 114 S.Ct. 1970, 1974 (1994) (citations omitted).
 
 
 15
 Prison officials can be held liable for an Eighth Amendment violation when an inmate shows: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official had "the state of mind ... of 'deliberate indifference' to inmate health or safety." Farmer, 114 S.Ct. at 1977 (citations omitted). "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Id. at 1978.
 
 
 16
 The record does not contain facts from which a jury could conclude that the defendants recklessly disregarded or were deliberately indifferent to the risk of harm to Fisher. Fisher admitted that, on the first day of his incarceration, nothing could have indicated to the defendants the danger he faced. On the second day of his incarceration, Fisher told a guard that "[e]verything was fine." On that day, Hughes was removed for examination of his injuries and complained to the defendants that he had been beaten. Someone (Fisher alleges it was Sheriff Moore) then entered cell two and threatened to withdraw prisoners' privileges if "this crap didn't stop." After that, Fisher suffered no injuries. The failure to remove Fisher from cell two after learning of the treatment Hughes had experienced was, at most, negligent. Furthermore, Fisher does not allege that he suffered any mistreatment after his request to be moved was denied (after Cureton took him to Moore and Williams).
 
 
 17
 A case could be made as to the Eighth Amendment liability of a sheriff responsible for a jail where "inmate-on-inmate violence occurred regularly when the jail was overcrowded, as it was [when the incident in question occurred]." Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir.1995). Fisher presents no such evidence that would provide a basis for imputing the mental state necessary for an Eighth Amendment violation.
 
 
 18
 [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.
 
 
 19
 Farmer, 114 S.Ct. at 1979. Fisher simply has not alleged that the defendants were aware of facts from which they could have drawn the inference that Fisher faced an excessive risk to his safety.
 
 III.
 
 20
 Fisher also alleges that his rights under the due process clause of the Fourteenth Amendment have been violated. To state a claim under that clause, Fisher must allege facts which indicate that the conditions of his confinement amounted to punishment. "[C]onditions of pretrial detention that implicate only the protection against deprivation of liberty without the due process of law, and no other express guarantee of the Constitution, are constitutional if they do not 'amount to punishment of the detainee.' " Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir.1994) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)).
 
 
 21
 Fisher has not alleged facts which show that the conditions of his confinement amounted to punishment. Fisher alleges that the "deficiencies in the operation of Cocke County Jail" were ignored by the defendants. Fisher has not alleged that the defendants intended to punish him by confining him in cell two. "Absent a showing of an expressed intent to punish on the part of jail officials, if such a condition or restriction of pretrial detention 'is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." ' " Thompson, 29 F.3d at 242 (quoting Bell, 441 U.S. at 538-39). Even though Fisher alleges that the defendants failed to comply with Cocke County's standards for incarceration, he has not alleged facts sufficient to show that there was some connection between that lack of compliance and his injuries. Absent any evidence of such a connection, this court cannot say that the conditions of Fisher's incarceration amounted to punishment. See Thompson, 29 F.3d at 243 ("Here, although plaintiffs have alleged instances of physical violence between inmates, plaintiffs have provided no evidence (e.g., that a misdemeanant was attacked by a felon) that such violence is in any way related to the lack of a classification system.").
 
 
 22
 Because Fisher has failed to allege facts sufficient to state a claim for violation of his statutory or constitutional rights, the defendants are entitled to qualified immunity. The decision of the magistrate judge is REVERSED.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The defendants are Cocke County, Tennessee and officers in the Cocke County Sheriff's office
 
 
 [2]
 The Cocke County Jail has also adopted policies suggested by the Tennessee Corrections Institute. Fisher presented evidence that jailers did not comply with those policies
 
 
 [3]
 Fisher alleges that he was tattooed involuntarily and that when the other inmates heard a guard coming to check the cell, he was forced to put his shirt on so the guard would not see the tattoo. Fisher introduced evidence that guards checked the cell on a predictable, hourly basis
 
 
 [4]
 Fisher identified this person as the "Sheriff" and said that this person was tall, overweight, and wearing a cowboy hat. The defendants introduced evidence that the Sheriff is short, not overweight, and does not wear a cowboy hat. Sheriff Moore denies any knowledge of this incident
 
 
 [5]
 A defendant "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." Johnson v. Jones, 115 S.Ct. 2151, 2159 (1995). This court may not review the magistrate judge's decision that there were genuine issues of material fact as to whether Fisher's rights were violated. This court may review the determination that Fisher has stated a claim