WILKINSON, Chief Judge,
concurring:
My dissenting colleagues believe they have found in Johnson v. Jones, — U.S. —, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), a decision that will doom the defense of qualified immunity once and for all. Hailing this development, they do not let years of qualified immunity jurisprudence, the actual text of Johnson, or the Supreme Court’s explanation of Johnson in Behrens v. Pelletier, — U.S. —, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), stand in their way. Writing in this vein, the dissent reads Johnson to essentially destroy interlocutory appeals under Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The majority opinion rightly regards Johnson as an important but limited decision which represents neither the termination of meaningful interlocutory review nor the demise of the qualified immunity defense. The dissent, by contrast, would enfeeble the law enforcement function specifically—and public decision-making generally—throughout this circuit.
I.
The dissenting opinion has a technical ten- or, but no one should mistake its import. As the dissent would have it, Johnson virtually abolished interlocutory appeals of denials of qualified immunity. In actually applying Johnson, the dissent suggests that the only issue still subject to interlocutory appeal is whether the legal right allegedly violated was “clearly established.” Finding that Winfield had a “well-settled” right as a prisoner to be “protected against physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm,” the dissent concludes that our review under Johnson is complete.
This marks an ominous development for many public decisionmakers. Although the dissent is indefinite on the point, the only way this judgment can be affirmed is on the belief that the mere allegation of a clearly established abstract right suffices for a case to go to trial. Whether the abstract legal right asserted by the plaintiff is “clearly established” will rarely be the controversy in a denial of a qualified immunity-defense. The primary issue will almost always be whether the given facts demonstrate that the right in question has been violated. The instant case illustrates the point. No one disputes the existence of the Eighth Amendment right alleged; the appeal turns instead on whether undisputed facts disclose a violation of that right. If this central question, whether given facts show a violation of established law, is not subject to immediate appeal, a public official’s right to appeal denials of qualified immunity will be of less than little worth.
Even without regard to any other Supreme Court decision, Johnson cannot be read as a rejection of interlocutory review and a reversal of Mitchell v. Forsyth. Indeed, the *536 Court’s holding in Johnson was premised on the fact that the “evidence sufficiency” question before it was distinguishable from the qualified immunity issues subject to interlocutory appeal under Mitchell. Johnson, — U.S. at —, 115 S.Ct. at 2156-58. Furthermore, the plain language of Johnson does not support the destruction of interlocutory review proposed by the dissent. The Johnson Court reaffirmed Mitchell’s ruling that an order denying a defendant’s motion for summary judgment is immediately apealable:
where (1) the defendant [is] a public official asserting a defense of “qualified immunity,” and (2) the issue appealed eon-eern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[ ] a violation of “clearly established” law.
Johnson, — U.S. at —, 115 S.Ct. at 2155. The appellate review authorized under Mitchell and Johnson thus involves two inquiries: (1) what constitutes “clearly established” law, and (2) whether “given facts” demonstrate a violation of such law. See McMillian v. Johnson, 88 F.3d 1554, 1562 (11th Cir.1996); Shinault v. Cleveland County Board of County Commissioners, 82 F.3d 367, 370 (10th Cir.1996). And if this were insufficiently clear, the Court repeated itself, stating that “the Mitchell appeal involved the application of ‘clearly established’ law to a given (for appellate purposes undisputed) set of facts,” and finding that a district court’s conclusion “that a given set of facts violates clearly established law” is a “reviewable determination.” Johnson, — U.S. at —, —, 115 S.Ct. at 2156, 2159 (emphasis added).
The flaw in the dissent’s interpretation of Johnson is evident from its conclusion that the law has taken flight from the facts. The dissent concludes that Winfield’s Eighth Amendment right is “well-settled” solely by examining Fourth Circuit precedent. But if the resolution of Mitchell appeals requires no more than the incantation of abstract and settled legal propositions, then Johnson’s explanation as to how appellate courts are to identify which facts are “given” for purposes of review becomes meaningless. See Johnson, — U.S. at —, 115 S.Ct. at 2159. The relevance of any legal proposition will not be clear until the facts to which the proposition is applied become apparent. Inescapably, we must say what the given facts are before we can determine “whether or not certain given facts showed a violation of ‘clearly established’ law.” Id. at —, 115 S.Ct. at 2155.
Despite finding the facts irrelevant to its own analysis of the instant case, the dissent next discusses at great length how we ai*e to identify the “given” facts for purposes of interlocutory review under Johnson, at least in those cases where the district court failed to set forth the facts on which it relied.[1] In such cases, Johnson contemplates that appellate courts may be forced to engage in “a detailed evidence-based review of the record.” Id. at —, 115 S.Ct. at 2159. Acknowledging this, the dissent insists that we may examine the record in such cases, but only insofar as our review identifies facts which support the district court’s decision:
The best evidence, after all, of what a district court has “likely assumed” as its predicate facts is not what the court of appeals believes it should have assumed, but the district court’s legal determination that on the facts it did assume (rightly or wrongly) a violation was shown.
Following the dissent’s example, we apparently are to comb the record for any scrap of evidence that could justify the trial court’s denial of immunity while deliberately ignoring undisputed facts which suggest a contrary conclusion. This is not “review” but a complete waste of time. District courts will simply cease explaining the factual basis for their denials of qualified immunity, and appellate courts will be left to rubber stamp their conclusions. We might as well abolish Mitchell appeals altogether as they will become precisely the “unwise use of appellate courts’ time” that Johnson was trying to avoid. Johnson, — U.S. at —, 115 S.Ct. at 2158.
The dissent thus stands the interlocutory review process on its head. Instead of look *537 ing at the facts to determine whether clearly established law was violated, we are to assume that the law was violated and construct a set of “given” facts to support that conclusion. Again, the appellate role as envisioned by the dissent is not to review district court decisions but to rationalize them. The Court in Johnson said nothing of the sort. When a district court has not adequately set out the factual basis for its decision, our review of the record of necessity must be an independent one, and it is incredible to suggest that we should do anything in undertaking it other than apply appropriate summary judgment standards.
II.
The infirmity of the dissent’s analysis of Johnson is all the more evident when considered in light of prior and subsequent precedent. The dissent reads Johnson in a virtual time warp, completely disregarding the teaching of Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), and relegating Behrens v. Pelletier, — U.S. —, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), the Supreme Court’s single explanation of Johnson, to a footnote.
A.
The dissent’s suggested resolution of this case is a veritable replica of the Eighth Circuit decision rejected by the Supreme Court in Anderson. The dissent states that the right to be “protected against physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm” was “well-settled” in this circuit at the time Winfield was assaulted. Having made this observation, the dissent finds our review to be complete, without considering whether the undisputed facts entitle the defendants to qualified immunity. Similarly, the Eighth Circuit in Anderson considered the generic right “to be free from warrantless searches of one’s home unless the searching officers have probable cause and there are exigent circumstances.” Anderson, 483 U.S. at 640, 107 S.Ct. at 3039. Concluding that this right was “clearly established,” the Eighth Circuit refused to consider whether Anderson’s specific conduct violated that right and denied him qualified immunity. Id. at 640-41, 107 S.Ct. at 3039-40.
The Supreme Court, however, flatly rejected the notion that a court can address the issue of qualified immunity without reference to the given facts of a particular case. The Court held that the right the official is alleged to have violated cannot be considered in the abstract but “must have been ‘clearly established’ in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Id. at 640, 107 S.Ct. at 3039. The Court thus noted, “It simply does not follow immediately from the conclusion that it was fairly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that Anderson’s search was objectively legally unreasonable.” Id. at 641, 107 S.Ct. at 3040. The Court recognized that if the question of qualified immunity could be resolved without regard to given facts, “[pjlaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow [v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),] would be transformed from a guarantee of immunity into a rule of pleading.” Id. at 639, 107 S.Ct. at 3039.
The dissent would hold that Johnson accomplished the very transformation that Anderson forbade. Seeking to cut off interlocutory review, the dissent phrases the right at issue in terms so general that there will always be a sufficient allegation of a violation of clearly established law. Every prisoner plaintiff can plead an Eighth Amendment right to protection against fellow inmates. If such an abstract iteration of the right suffices to conclude interlocutory review in favor of the plaintiff, every district court denial of qualified immunity will automatically lead to trial. The dissent thus precludes the possibility that undisputed facts in the particular case will justify an award of immunity.
*538 B.
The dissent pays no more heed to Supreme Court caselaw subsequent to Johnson than it does to Supreme Court precedent prior to Johnson.' Behrens, the Supreme Court’s single explication of Johnson to date, is relegated to a footnote, perhaps because it represents an apparently vain attempt on the part of the Supreme Court to foreclose precisely the sort of over-reading of Johnson proposed by the dissent. The main holding of Behrens, after all, is that public officers entitled to claim qualified immunity may bring not one but two interlocutory appeals on the question of immunity, — U.S. at —, 116 S.Ct. at 839, hardly the action of a Court intent on what 'the dissent has termed a “dramatic curtailment” of such appeals.
Even where contested facts exist, Behrens indicates that purely legal issues remain which an appellate court can consider while respecting the role reserved for trial courts by Johnson. “Denial of summary judgment often includes a determination that there are controverted issues of material fact, and Johnson surely does not mean that every such denial of summary judgment is nonappealable.” Behrens, — U.S. at —, 116 S.Ct. at 842. When reviewing an interlocutory appeal pursuant to Mitchell, Johnson instructs us not to reconsider a district court’s summary judgment order “insofar as that order determines whether or not the pretrial record sets forth a ’genuine’ issue of fact for trial.” Johnson, — U.S. at —, 115 S.Ct. at 2159. We are not to second-guess a trial court on questions of “evidence sufficiency.” See id. at —, 115 S.Ct. at 2156. No question of sufficiency is raised, however, when an appellate court finds that the defendant is entitled to qualified immunity even on the plaintiff’s version of the facts. As the Seventh Circuit has noted, “If there is no possible resolution of the [factual] disagreement that would save the plaintiffs case from the defense of immunity, the appellate court will not have to resolve any factual disagreements ... in order to determine whether the defense, is good.” Anderson v. Romero, 72 F.3d 518, 520-21 (7th Cir.1995).
Similarly, where the material facts are undisputed, an appellate court’s determination that the defendant officers are entitled to qualified immunity does not require any reweighing of the evidence. Appellate courts may determine whether genuinely disputed facts are material without trespassing on the trial court’s domain. Materiality “is only a criterion for categorizing factual disputes ... not a criterion for evaluating the evidentiary underpinnings of those disputes.” Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Unlike the issue of genuineness, materiality therefore does not consider the sufficiency of evidence supporting a fact but only a fact’s legal relevance, whether it “might affect the outcome of the suit under the governing law.” Id. Given undisputed material facts, the only remaining issue is the “purely legal determination” whether the defendant’s actions were objectively reasonable, in which case “Johnson does not preclude appellate jurisdiction.” Lennon v. Miller, 66 F.3d 416, 422 (2d Cir.1995).
In the instant case, the majority opinion thus appropriately finds that the defendants were entitled to qualified immunity based on the undisputed material facts. Most notably, the court finds that Gibson had to get by the unarmed guard Williams in order to attack Winfield. It is inconceivable that the defendants were deliberately indifferent to a situation which placed one of themselves at risk, a risk that in fact resulted in injury to Williams.[2]
Other circuits have declined to embrace the dissent’s constriction of the appellate role in enforcing qualified immunity. In Prosser v. Ross, 70 F.3d 1005 (8th Cir.1995), for example, the Eighth Circuit reversed a denial of qualified immunity in a case that is the virtual mirror image of this one. Prosser, an inmate, complained that Ross, a prison *539 guard, had failed to prevent or respond properly to an attack on him by a fellow inmate. The district court stated, without explanation, that there were issues of material fact which precluded granting summary judgment. Forced to review the record itself, the Eighth Circuit held that it had jurisdiction under Johnson to consider Ross’ interlocutory appeal because “the facts required to determine whether Ross is entitled to qualified immunity are not genuinely in dispute.” Id. at 1006-07. Based on the facts that the assailant was armed, that the armed attack was unexpected, that Ross was alone, and that he immediately sought help, the court found that Ross had responded reasonably and could not have been expected to prevent the assault.
Other circuits have taken a similar approach to Mitchell appeals and have not hesitated to correct the erroneous application of immunity doctrine where the material facts were undisputed or where the defendant was entitled to immunity even on the plaintiffs account of events. See Foy v. Holston, 94 F.3d 1528, 1531 n. 3 (11th Cir.1996) (awarding qualified immunity and finding that Johnson allows immediate review to consider “whether, taking the facts in the light most favorable to the plaintiffs, clearly established federal rights were violated”); Osolinski v. Kane, 92 F.3d 934, 936 (9th Cir.1996) (awarding immunity and finding that Johnson allows immediate review when the appeal concerns “whether certain given facts show a violation of clearly established law”); Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir.1996) (awarding immunity and finding that Johnson allows immediate review when the appeal concerns only “whether an official’s conduct was objectively reasonable in light of clearly established law” in light of “a given .set of facts”); Anderson v. Romero, 72 F.3d 518, 520 (7th Cir.1995) (partially awarding qualified immunity and finding that Johnson allows immediate review “[i]f there is no possible resolution of the [factual] disagreement that would save the plaintiffs case from the defense of immunity”); Lennon v. Miller, 66 F.3d 416, 422 (2d Cir.1995) (awarding immunity and finding that Johnson allows immediate review where an appeal “poses only a legal question about the objective reasonableness of the defendants’ actions under undisputed facts”); Sanderfer v. Nichols, 62 F.3d 151, 153 n. 2 (6th Cir.1995) (awarding immunity and finding that Johnson allows immediate review because “the plaintiffs version of events, regardless of the sufficiency of the supporting evidence, does not state a claim for [ ] a [constitutional] violation”).
All of these circuit decisions followed Johnson. All of them involved interlocutory appeals, and all resulted in reversal of a district court’s denial of qualified immunity. The dissent’s report of the death of interlocutory review would thus appear to be greatly exaggerated, not to mention premature. As these cases illustrate, to adopt the dissent’s position would place the Fourth virtually alone among the circuits in refusing to consider whether given facts constitute a violation of clearly established law.
III.
Only by ignoring the importance of interlocutory appeals to the vitality of qualified immunity can the dissent read Johnson as a dramatic curtailment of Mitchell. The dissent tells us that although its interpretation of Johnson “will sometimes force to trial public officials who, under a correct application of qualified immunity doctrine should not be put to trial,” this concern “simply must yield to ‘competing considerations’ of ‘delay, comparative expertise of trial and appellate courts, and wise use of appellate resources.’” (Quoting Johnson, — U.S. at —, 115 S.Ct. at 2158.) Application of legal doctrine to given facts, however, is an appellate court’s area of comparative expertise. And Mitchell has already determined that interlocutory review to correct misapplication of immunity principles does constitute a “wise use of appellate resources.” Mitchell likewise indicated that any delay caused by interlocutory review is necessary to give meaning to' the Supreme Court’s constant admonition that “insubstantial claims should not proceed to trial.” Harlow, 457 U.S. at 816, 102 S.Ct. at 2737; see also Behrens, — U.S. at —, 116 S.Ct. at 838; Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); Burns v. Reed, 500 U.S. 478, 494 n. 8, 111 S.Ct. 1934, 1944 n. 8, *540 114 L.Ed.2d 547 (1991); Anderson, 483 U.S. at 640 n. 2, 107 S.Ct. at 3039 n. 2; Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815-16; Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 3019-20, 82 L.Ed.2d 139 (1984); Butz v. Economou, 438 U.S. 478, 507-08, 98 S.Ct. 2894, 2911-12, 57 L.Ed.2d 895 (1978).
Even the dissent acknowledges that there is a cost to permitting trial of meritless suits against public officers, but it insists that such costs must “simply be tolerated.” The dissent trivializes the significance of interlocutory appeals, assuring us, “When occasional error does occur, its effect—of forcing unwarranted trial—is exhausted there; the error is not immunized and may yet be corrected at trial or on later appeal, with liability thereby avoided.” Mitchell held the very opposite: that qualified immunity “is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.” Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis added); accord Swint v. Chambers County Commission, — U.S. — , — , 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995); Digital Equipment Corp. v. Desktop Direct, Inc., 511 U.S. 863, 870, 114 S.Ct. 1992, 1997, 128 L.Ed.2d 842 (1994); Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 687-88, 121 L.Ed.2d 605 (1993); Wyatt v. Cole, 504 U.S. 158, 166, 112 S.Ct. 1827, 1832, 118 L.Ed.2d 504 (1992); Hunter, 502 U.S. at 227, 112 S.Ct. at 536; Siegert v. Gilley, 500 U.S. 226, 232-33, 111 S.Ct. 1789, 1793-94, 114 L.Ed.2d 277 (1991); Lauro Lines s.r.l. v. Chasser, 490 U.S. 495, 499-500, 109 S.Ct. 1976, 1978-79, 104 L.Ed.2d 548 (1989); Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988). The dissent assures us that post-trial appellate review can cure any defects, but Mitchell authorized interlocutory appeals precisely because “[a] district court’s decision [to deny qualified immunity] is effectively unreviewable on appeal from a final judgment.” Mitchell, 472 U.S. at 527, 105 S.Ct. at 2816.
In- thus construing Johnson to eviscerate interlocutory appeals, the dissent engages in wholesale substitution of its own views for the insistent teaching of Supreme Court precedent. The dissent simply projects onto Johnson its own balance of the competing interests at stake. Finding official accountability to the federal judiciary to be of much greater importance than the societal costs of meritless lawsuits, the dissent treats qualified immunity as nothing more than a “mere defense to liability.” Having done so, it places little significance on interlocutory appeals and readily concludes that “competing considerations” support the virtual elimination of such appeals. Seeking to make rejections of immunity defenses unreviewable, the dissenting opinion simply ignores the fact that the Supreme Court has long since spoken on the balance between the relevant interests, and that we are not free to revisit the question. The dissent’s position might have been appropriate for an advocate arguing Mitchell, but at this late date it is only an argument for overruling Mitchell, which the Supreme Court has not seen fit to do.
IV.
Interlocutory appeals of qualified immunity denials serve several critical functions. They draw the line of demarcation between the objectively reasonable exercise of official discretion on the one hand and the violation of clearly established rights on the other. By requiring review prior to trial, they also constitute a check on the reflexive resort to trials that would eventually erode the exercise of official discretion and nullify the qualified immunity defense.
Discretion is thus at the core of what the interlocutory appeal protects. Not absolute discretion—but limited, qualified latitude in making judgments. If we are to have few interlocutory appeals and many trials, the drastic expansion of litigation will mean the equally drastic constriction of discretion. Yet every occupation—be it teacher, parent, corporate executive, or county clerk—demands the exercise of channeled discretion. Law enforcement is no exception. Officers “routinely make close decisions in the exercise of the broad authority that necessarily is *541 delegated to them.” Davis, 468 U.S. at 196, 104 S.Ct. at 3020. Decisions involving public order “are more likely than not to arise in an atmosphere of confusion, ambiguity, and swiftly moving events,” Scheuer v. Rhodes, 416 U.S. 232, 246-47, 94 S.Ct. 1683, 1691-92, 40 L.Ed.2d 90 (1974), and involve the application of legal standards that are notoriously imprecise, such as “probable cause” and “excessive force.” Officers are not jurists; they “must often act swiftly and firmly at the risk that action deferred will be futile or constitute a virtual abdication of office.” Id. at 246, 94 S.Ct. at 1691. Like many executive officials, law enforcement officers thus are “called upon to act under circumstances where judgments are tentative and an unambiguously optimal course of action can be ascertained. only in retrospect.” Butz, 438 U.S. at 500 n. 28, 98 S.Ct. at 2907 n. 28.
Under such conditions, even an official of the highest integrity and competence will occasionally err. Without the protection of discretion afforded by qualified immunity and interlocutory review, every mistake “ ‘exposes] such [officers] as have been honestly mistaken to suit by anyone who has suffered from their errors.’” Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 1339, 3 L.Ed.2d 1434 (1959) (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949)). Public officers are irresistible targets for meritless lawsuits. See Butz, 438 U.S. at 509-10, 98 S.Ct. at 2912-13; Imbler v. Pachtman, 424 U.S. 409, 425, 96 S.Ct. 984, 992-93, 47 L.Ed.2d 128 (1976). From detention through incarceration, nearly every type of law enforcement action is almost certain to invoke the ire of its subject, providing a constant stream of potential plaintiffs with recurring motives to sue. Onto this pyre of litigation, the dissent pours yet more fuel, discarding one of the few deterrents to litigious action that still exists.
The legal order that the dissent would construct risks rendering law enforcement officers so fearful of lawsuits that they will simply cease protecting the public. Cf. Wood v. Strickland, 420 U.S. 308, 319-20, 95 S.Ct. 992, 999-1000, 43 L.Ed.2d 214 (1975) (threat of liability will “undoubtedly deter even the most conscientious school decisionmaker from exercising his judgment ... in a manner best serving the long-term interest of the school and the students”). After all, the safest course is not to exercise one’s discretion, but not to act at all. Doing nothing may not enforce the law or protect the peace, but it most assuredly will minimize an officer’s chances of becoming a section 1983 defendant.[3]
If interlocutory review of immunity denials is no longer possible, then extended discovery and trials of law enforcement actions will become a way of life. Yet litigation is decidedly not what law enforcement officers do for a living. Time in court is time off the street. Whatever incentives may attract persons to the law enforcement profession cannot include the prospect that every step one takes may turn into a policeman’s nightmare and a litigator’s dream.
Perhaps fearing the arbitrary exercise of discretion, the dissent pursues an ideal that will never exist, one where frequent trials of police-citizen encounters will sustain every instance of proper official conduct, while excising with surgical precision every mistake. This vision exists on an ever-receding horizon. The rule of law will not flourish without the aid of law enforcement, and, until men become angels, their discretionary actions will be accompanied by mistakes. But authority in the position of continually having to justify itself will not be able to assert itself. If the dissenting position becomes the law, the search for the perfect will have become the lasting enemy of the good.
Judges RUSSELL, WIDENER, and HAMILTON authorize me to say that they join in this opinion.

. The dissent thus finally addresses the facts of this case, but only after conceding, solely for purposes of argument, that the court confronts a reviewable issue.

. The dissenting opinion similarly misconstrues Gooden v. Howard County, 954 F.2d 960 (4th Cir.1992) (en banc), to the extent that it implies that Gooden is inconsistent with Johnson and Behrens. As in this case, the grant of summary judgment in Gooden rested on undisputed facts regarding what the officers perceived at the time of the incident and the objective reasonableness of their actions in light of those undisputed perceptions. See id. at 964-66.

. As the circumstances of this case suggest, inaction is not an ironclad defense against suit, but it will remain an official's most secure protection against constant trials in the absence of interlocutory review.