29 F.3d 238
 29 Fed.R.Serv.3d 320
 Robert M. THOMPSON; and Larry R. Holdsworth, Plaintiffs-Appellants,
v.
COUNTY OF MEDINA, OHIO; Ralph A. Berry; Sterling G.
Sechrist; and John H. Happ, individually and as members of
the Board of Commissioners of Medina County; and Al John
Ribar, individually and as Sheriff of Medina County,
Defendants-Appellees.
 No. 93-3110.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 10, 1994.
Decided June 23, 1994.
 
 Thomas Kelley (argued), Robert Armbruster (briefed), Armbruster, Kelley, McKenna & Modugno, Akron, OH, for plaintiffs-appellants.
 Timothy T. Reid (briefed), Reid, Berry & Stanard, Cleveland, OH, William L. Thorne, Office of the Pros. Atty., Medina, OH, Andrew M. Wargo (argued), Reid, Berry & Stanard, Cleveland, OH, for defendants-appellees.
 Before: MARTIN and JONES, Circuit Judges; and CONTIE, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Contending that the conditions of confinement in the Medina County Jail violated their constitutional rights, inmates Robert M. Thompson and Larry R. Holdsworth brought suit, pursuant to 42 U.S.C. Sec. 1983, against the County of Medina, three members of the County's board of commissioners, and the County's sheriff. Thompson and Holdsworth now appeal, claiming that the district court erred in ruling on defendants' (the "County's") motion for summary judgment before addressing plaintiffs' motion for class certification, and in granting the County's summary judgment motion as to all but two of plaintiffs' claims. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 * At the time they brought this action in the winter of 1988, Thompson and Holdsworth were incarcerated at the Medina County Jail as pretrial detainees. Both remained at the facility for over six months.
 
 
 3
 Thompson and Holdsworth raised the following claims with respect to the operation of the jail:
 
 
 4
 (1) inadequate ventilation;
 
 
 5
 (2) inadequate medical care and staffing;
 
 
 6
 (3) inadequate recreation;
 
 
 7
 (4) lack of inmate classification;
 
 
 8
 (5) unsanitary conditions;
 
 
 9
 (6) inadequate mental treatment programs;
 
 
 10
 (7) lack of due process in disciplinary proceedings;
 
 
 11
 (8) lack of access to the courts; and
 
 
 12
 (9) interference with legal mail.
 
 
 13
 Alleging that these conditions violated their rights under the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, and making related claims under the constitution and laws of the State of Ohio, Thompson and Holdsworth filed suit, individually and on behalf of all present and future inmates of the jail, in federal court on July 11, 1988. On January 9, 1989, plaintiffs filed a motion for class certification. The County filed a motion for summary judgment on May 31. On June 24, 1991, the district court, in a well-reasoned memorandum and order, granted summary judgment in favor of the County with respect to all claims except the allegations of denial of access to the courts and denial of due process in disciplinary procedures, and deferred ruling on the motion for class certification. See Thompson v. County of Medina, No. 91-3850 (N.D.Ohio June 24, 1991).
 
 
 14
 On December 30, 1992, after the district court had certified a class only on the remaining issues of denial of access and discipline, the court approved a consent agreement entered into by the parties resolving these two claims, and designated the June 24, 1991 order, granting in part and denying in part the County's motion for summary judgment, as final and appealable. This timely appeal followed.
 
 II
 
 15
 * Thompson and Holdsworth initially maintain that the district court erred by considering the merits of their case in deciding whether they would be appropriate class representatives, and abused its discretion by ruling on the motion for summary judgment prior to ruling on the motion for class certification. In support of this argument, plaintiffs offer the Supreme Court's observation in Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), that it could "find nothing in either the language or history of [Federal] Rule [of Civil Procedure] 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." See also Weathers v. Peters Realty Corp., 499 F.2d 1197, 1201 (6th Cir.1974) ("when determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits"). Because they maintain that they were in fact appropriate class representatives, and had satisfied the other requirements of Rule 23(a), plaintiffs conclude that the district court erred in not certifying the class as to those issues disposed of on summary judgment. We disagree.
 
 
 16
 Rule 23 provides that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." FED.R.CIV.P. 23(c). Addressing an identical plaintiffs' claim to that brought by the plaintiffs here--the district court erred in ruling on a motion for summary judgment prior to ruling on a motion for class certification--the Ninth Circuit held that:
 
 
 17
 Neither Fed.R.Civ.P. 23 nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment. Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendant consents to the procedure, it is within the discretion of the district court to decide the motion for summary judgment first.
 
 
 18
 Wright v. Schock, 742 F.2d 541, 545-46 (9th Cir.1984). Similarly, this Court has considered a claim that the district court was required to determine whether a plaintiff's complaint could be maintained as a class action before the court could dismiss the entire action. Marx v. Centran Corp., 747 F.2d 1536, 1552 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). In rejecting this contention, this Court responded directly to the reasoning and precedent relied upon by plaintiffs in the instant matter. As the Marx Court observed:
 
 
 19
 [Eisen and Weathers ] merely stand for the proposition that when a district court is determining whether a class action may properly be maintained under Federal Rule of Civil Procedure 23, the relative merits of the underlying dispute are to have no impact upon the determination of the propriety of the class action. These cases do not establish a broad rule that in all cases the determination of the propriety of a class action must precede any consideration of the merits.
 
 
 20
 Id. Here, given that many of the violations claimed by Thompson and Holdsworth had been remedied, or never existed, and that neither plaintiffs nor the members of the class were prejudiced by the order of the court's rulings, the district court acted well within its discretion in concluding that it should decide the motion for summary judgment first. See Wright, 742 F.2d at 544 ("It is reasonable to consider a Rule 56 motion first [ (before ruling on a motion for class certification) ] when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation.").
 
 
 21
 In regard to the district court's denial of the motion for class certification as to the issues disposed of on summary judgment, Rule 23 provides that members of a class may sue as representative parties on behalf of the entire class only if:
 
 
 22
 (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 23
 FED.R.CIV.P. 23(a). Thompson and Holdsworth, moreover, bore the burden of demonstrating that they satisfied all of these prerequisites. Senter v. General Motors Corp., 532 F.2d 511, 522 (6th Cir.), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). This Court reviews a district court's decision on a motion for class certification under Rule 23 for abuse of discretion. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir.1988). Given these standards, we find that the district court did not abuse its discretion in refusing to certify a class as to the issues disposed of on summary judgment. Cf. Gwirtz v. Ohio Education Ass'n, 887 F.2d 678, 683 (6th Cir.1989) (declining, in light of a finding that the district court did not err in granting judgment against named plaintiffs, to order district court to certify class nonetheless), cert. denied, 494 U.S. 1080, 110 S.Ct. 1810, 108 L.Ed.2d 941 (1990).
 
 B
 
 24
 Thompson and Holdsworth contend that the district court erred in granting summary judgment to the County on all but two of the issues raised in their complaint. This argument is without merit.
 
 
 25
 This Court reviews a grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). We view all evidence before us in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 26
 On appeal, plaintiffs argue that the conditions of confinement at the jail violated their Eighth and Fourteenth Amendment rights. First, the Eighth Amendment requires that convicted prisoners held in the Medina County Jail be provided "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Second, pretrial detainees held in the jail are protected under the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). This Court has made clear that such detainees are thus entitled to the same Eighth Amendment rights as other inmates. Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir.1985). In addition, conditions of pretrial detention that implicate only the protection against deprivation of liberty without the due process of law, and no other express guarantee of the Constitution, are constitutional if they do not "amount to punishment of the detainee." Bell, 441 U.S. at 535, 99 S.Ct. at 1872. Absent a showing of an expressed intent to punish on the part of jail officials, if such a condition or restriction of pretrial detention "is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " Id. at 538-39, 99 S.Ct. at 1874. Third, all inmates at the jail are also protected by the Fourteenth Amendment against deprivation without due process of law of such protected liberty interests that may arise from state statutes, regulations, or policies. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).
 
 1. Personal Safety
 
 27
 Thompson and Holdsworth allege that by failing to classify prisoners (e.g. housing felons and misdemeanants separately), maintain an adequate number of trained staff members, and supervise the inmates, the County violated the plaintiffs' basic Eighth Amendment right to be reasonably free from violence and sexual assault. Plaintiffs further contend that the lack of a classification system deprived them, without due process, of a protected liberty interest created by Section 5120:1-8-02 of the Ohio Administrative Code.
 
 
 28
 As noted by the district court, plaintiffs' Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates the inmates' right to personal safety. Walker v. Mintzes, 771 F.2d 920, 925 (6th Cir.1985). The Supreme Court has held that "[§ ]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271, 283 (1991). A general allegation of indecent circumstances usually is not sufficient. Birrell v. Brown, 867 F.2d 956, 958 (6th Cir.1989).
 
 
 29
 Here, plaintiffs first contend that the County's failure properly to classify inmates violated plaintiffs' Eighth Amendment right to personal safety. Thompson and Holdsworth, however, do not claim that they ever suffered any injury as a result of the jail's classification system, nor did they establish any causal link between the alleged fights and assaults among other inmates and the classification system. This Court has held that while a prisoner does not need to demonstrate that he has been the victim of an actual attack to bring a personal safety claim, he must establish that he reasonably feared such an attack. Marsh v. Arn, 937 F.2d 1056, 1062 n. 5 (6th Cir.1991) (citing Martin v. White, 742 F.2d 469, 474 (8th Cir.1984)); see also Wilson v. Seiter, 893 F.2d 861, 865 (6th Cir.1990), vacated on other grounds, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In Wilson, plaintiff inmates claimed that the practice of housing mentally ill inmates in plaintiffs' prison dorms placed the plaintiffs in fear for their safety. This Court granted summary judgment to defendants on this claim, noting that "[t]he absence of allegations of prior physical violence involving any inmate supporting appellants' claims leads us to conclude that their fear is not reasonable." Id. at 865. Here, although plaintiffs have alleged instances of physical violence between inmates, plaintiffs have provided no evidence (e.g. that a misdemeanant was attacked by a felon) that such violence is in any way related to the lack of a classification system. Although this Court must draw all inferences in plaintiffs' favor in addressing the County's motion for summary judgment, plaintiffs have not even met the minimal burden of showing a sufficient inferential connection between the classification system and inmate violence to justify a reasonable fear for personal safety.
 
 
 30
 The district court did not explicitly address plaintiffs' further claim that the County's failure to maintain a sufficient number of trained jail staff members, and to supervise the inmates adequately, also violated plaintiffs' right of personal safety. Nonetheless, a detailed review of the record reveals that just as plaintiffs failed to adduce sufficient evidence linking the lack of a classification system to personal safety concerns, they also failed to raise any genuine issue of material fact regarding whether the lack of an adequate number of trained staff caused them to reasonably fear for their safety. Moreover, the County's sheriff explained in his affidavit that, presumably since the time of plaintiffs' filing suit, the jail has added four new guard positions, a requirement that new jailors attend a 120-hour training program, and a requirement that existing staff attend the same training program as well as local seminars at a vocational training school. Accordingly, we conclude that the district court did not err in granting summary judgment to the County on the issue of plaintiffs' Eighth Amendment right to be free from violence and sexual assault.[1]
 
 
 31
 Next, plaintiffs argue that the lack of a classification system deprived them of a protected liberty interest created by Section 5120:1-8-02 of the Ohio Administrative Code. Plaintiffs did not make this explicit contention in their complaint, and the district court did not address this argument below. As noted by the district court in addressing plaintiffs' separate contention that the lack of due process in jail disciplinary procedures violated a protected liberty interest created by the state's administrative code, only regulations that contain "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow" create such an interest. Thompson, 490 U.S. at 463, 109 S.Ct. at 1910. Because plaintiffs have not even alleged that the County violated the specific directives within the code section on classification, the argument that the County has violated a protected liberty interest created by this section is wholly without merit. See OHIO ADMIN.CODE Sec. 5120:1-8-02 (providing only that full service jails must consider certain criteria in a certain priority order, to the maximum extent possible, in classifying prisoners).
 
 2. Exercise
 
 32
 Thompson and Holdsworth contend that the County placed undue restrictions on their opportunities for physical exercise, in violation of the Eighth Amendment. In addition, plaintiffs contend that by maintaining such restrictions, the County deprived them, without due process, of a protected liberty interest created by Section 5120:1-8-11(A) of the Ohio Administrative Code.
 
 
 33
 The district court adequately addressed and properly rejected the plaintiffs' Eighth Amendment exercise claim. Although plaintiffs correctly note that the district court did not address the further issue of a possible deprivation of a protected liberty interest in exercise, the plaintiffs once again did not include this claim in their complaint, and the contention is based on a misreading of the applicable code section. The code provides in pertinent part:
 
 
 34
 (1) All jails shall provide for an on-going recreational program to include: physical exercise not less than five hours per week for those prisoners who are physically able, those who desire exercise, and those whose stay will exceed one hundred twenty hours.
 
 
 35
 (2) The on-going program shall provide an opportunity for outdoor exercise when weather permits.
 
 
 36
 OHIO ADMIN.CODE Sec. 5120:1-8-11(A). In essence, plaintiffs interpret this provision to mean that the County must provide a minimum of five hours of outdoor exercise per week whenever weather permits, and allege that the County has not done so. Given the difficulties inherent in the day-to-day administration of a prison system, the Supreme Court has noted the dangers of an erroneously broad creation of protected liberty interests in this context. See Hewitt v. Helms, 459 U.S. 460, 470, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) ("There are persuasive reasons why we should be loath to transpose all of the reasoning in the cases just cited to the situation where the statute and regulations govern the day-to-day administration of a prison system."). As is clear from the language of Section 5120:1-8-11(A), plaintiffs' interpretation does not in fact reflect a mandatory directive, and thus plaintiffs' claim is without merit. See Thompson, 490 U.S. at 463, 109 S.Ct. at 1910 (holding that a regulation creates a protected liberty interest only to the extent that it explicitly deprives prison officials of decisionmaking authority).
 
 3. Shelter
 
 37
 Thompson and Holdsworth assert that the jail's inadequate heating and ventilation systems, and maintenance and sanitation procedures violated their Eighth Amendment right to adequate shelter. The district court adequately addressed and properly rejected each of these arguments.
 
 4. Medical and Mental Health Care
 
 38
 Thompson and Holdsworth argue that they were denied medical treatment for their respective back problems, Holdsworth contends that he generally received poor medical treatment, and Thompson alleges that he was denied treatment for his drug addiction, all in violation of the Eighth Amendment. Plaintiffs further argue that by failing to give them physical examinations and to maintain adequate mental health and social service programs, the County deprived them, without due process, of protected liberty interests created by Sections 5120:1-8-09 and 5120:1-8-11(A)(5) of the Ohio Administrative Code.
 
 
 39
 The Eighth Amendment prohibits deliberate indifference by prison officials to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Here, the district court adequately addressed and properly rejected plaintiffs' Eighth Amendment claims based on their back problems and Holdsworth's allegation that he received generally insufficient medical care. In rejecting Thompson's additional Eighth Amendment claim that he was denied adequate care for his drug addiction, the district court observed that he "received drug counseling from [counselor] Emily Sanders and from the county psychiatrist." As noted by plaintiffs on appeal, there is some dispute as to whether the county psychiatrist, who did in fact meet with Thompson, actually provided him with drug counseling. Sanders, however, indisputably met with Thompson at least twice and recommended that Thompson "be placed within drug rehabilitation." Given these circumstances, we conclude that there is no genuine material issue of fact with regard to whether the plaintiffs had serious medical needs to which the County was deliberately indifferent.
 
 
 40
 Finally, plaintiffs claim that they were deprived of protected liberty interests in physical exams and mental health programs. Yet again, the plaintiffs did not make this explicit claim in their complaint, and the district court did not address this contention below. Nevertheless, this due process argument is without merit. First, the section of the state's administrative code entitled "Medical; full service jail" provides in pertinent part:
 
 
 41
 (D) Within fourteen days after admission, a health appraisal shall be completed for each prisoner whose stay exceeds ten days. This appraisal shall include but not be limited to:
 
 
 42
 (1) Review of preliminary health evaluation.
 
 
 43
 (2) Additional data to complete the medical and psychiatric history.
 
 
 44
 (3) Laboratory and diagnostic tests to detect communicable diseases, if deemed appropriate by medical staff.
 
 
 45
 (4) Height, weight, pulse, blood pressure, and temperature.
 
 
 46
 (5) Other tests and examinations as appropriate.
 
 
 47
 OHIO ADMIN.CODE Sec. 5120:1-8-09(D) (emphasis added). Here, Holdsworth's only potentially relevant allegation is that neither he nor "anybody ... in there" was given a "physical." This code section, however, does not remove the County's discretion whether to administer laboratory and diagnostic tests, or to otherwise conduct a comprehensive physical exam, as part of the mandated health appraisal. Moreover, Holdsworth concedes that he saw a doctor on a weekly basis while at the jail, and does not allege that the County failed to treat him in accordance with the other provisions of Section 5120:1-8-09(D). Thompson, in turn, concedes that he was given a health screening upon arriving at the jail. Thus, because the code does not create a protected liberty interest in an actual full physical exam, plaintiffs' claim in this respect must fail.
 
 
 48
 Next, the section of the administrative code entitled "Recreation/programming; full service jail" provides in pertinent part:
 
 
 49
 All jails shall arrange for professional intervention through qualified in-house staff or written agreements with appropriate community service agencies in the areas of: alcohol and drug abuse treatment; academic and vocational training; psychological and social services; and other community services when appropriate.
 
 
 50
 OHIO ADMIN.CODE Sec. 5120:1-8-11(A)(5). Here, uncontroverted evidence reveals that the jail: (1) conducts in-house Alcoholics Anonymous meetings; (2) transports inmates to drug and other treatment programs, when necessary; (3) utilizes social treatment programs available through County social agencies and the services of the Fallsview Psychiatric Hospital to treat inmates; and (4) employs a psychiatrist, who provides counseling to the inmates. Accordingly, plaintiffs' contention that the County has failed to comply with the mandatory language of Section 5120:1-8-11(A)(5) is unfounded.
 
 III
 
 51
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 In so ruling, we are cognizant of the fact that although neither factor alone constituted an Eighth Amendment violation, the lack of adequately trained staff and the lack of a classification system might in theory have had the mutually enforcing effect of depriving plaintiffs' right to personal safety. See Wilson, 501 U.S. at 303, 111 S.Ct. at 2327, 115 L.Ed.2d at 283 (noting that some conditions of confinement may establish an Eighth Amendment violation when viewed in combination, even when each would not do so alone). Based on the record on summary judgment, however, we are confident in this case that, even in combination, the alleged lack of adequately trained staff members and the alleged lack of an inmate classification system did not deprive plaintiffs of their right to personal safety. We note furthermore that our decision in this case is not affected by the Supreme Court's most recent analysis of an inmate's right to personal safety. See Farmer v. Brennan, --- U.S. ----, ---- - ----, 114 S.Ct. 1970, 1974-75, 128 L.Ed.2d 811 (1994) (holding that an inmate must show that a prison official was "subjectively aware" of a substantial risk of harm to the inmate to establish that the official was "deliberately indifferent" to that risk in violation of the Eighth Amendment)