**John E. WELLS, Sr., Plaintiff,**

v.

**JEFFERSON COUNTY SHERIFF DEPARTMENT, et al., Defendants.**

No. C2–00–0077.

United States District Court, S.D. Ohio, Eastern Division.

March 28, 2001.

**1004**

John E. Wells, Mansfield, OH, pro se.

Curtis Franklin Gantz, Lane, Alton & Horst, Colmbus, OH, for Defendant.

### OPINION AND ORDER

SARGUS, District Judge.

Plaintiff John E. Wells, Sr. ("Wells"), acting *pro se*, filed this 42 U.S.C. § 1983 action against the Jefferson County Sheriff's Department, Jefferson County Sheriff Fred Abdalla ("Abdalla"), and two John Doe officers employed at the Jefferson County Jail ("Jail") in Steubenville, Ohio, claiming that they violated various constitutional and statutory rights he enjoys during his imprisonment. Wells moved for summary judgment on November 28, 2000, and the defendants filed a similar motion on November 30, 2000. Wells filed a memorandum contra to defendants' motion on December 28, 2000, and defendants filed a motion for leave to file a reply on February 7, 2001 on the grounds that they never received Wells's motion contra. The reply was filed on February 16, 2001. The summary judgment motions are now ripe for decision. For the following reasons, defendants' motion for summary judgment will be granted and this case will be dismissed.

**I.**

Summary judgment is not a substitute for trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. In addition, the Court must give

broad construction to pleadings prepared by *pro se* litigants such as this plaintiff. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is with these standards in mind that the pending summary judgment motions will be decided.

## II.

In evaluating the defendants' motion for summary judgment, the facts, viewed through the appropriate evidentiary standard, are drawn from Wells's complaint, deposition, and affidavits filed in conjunction with various motions. They may be fairly summarized as follows.

Wells was arrested on October 2, 1997 by the Jefferson County Police Department on charges that he raped his minor children. He was housed at the Tuscarawas County Jail until October 13, 1997 when space became available in the Jefferson County Jail's general population to accommodate him. Apparently, the other inmates learned that he had been booked on sexual charges and began "harassing and teasing" Wells. Complaint at ¶ 1. Wells alleges that the failure of the deputies to intervene on his behalf allowed the confrontations to escalate into physical assaults.

On November 2, 1997, a physical altercation occurred between Wells and a fellow inmate, Joshua Vetanze or Ventanze ("Ventanze"). The acrimonious relationship between Wells and some of his fellow prisoners escalated after this incident. For example, on November 10, 1997, Ventanze threw burning paper into Wells's cell which ignited some of his property, including a pair of standard issue shower shoes which were made, in part, of rubber. As they burned they emitted a thick smoke which caused Wells extreme discomfort. According to Wells, he was not permitted to leave his cell to escape this smoke. Wells also allegedly received threats dur-

ing this time from other prisoners who assisted or were otherwise involved with Vetanze's harassment of Wells, including David Hoberek, Jr. ("Hoberek").

As a result of these incidents, Wells became increasingly concerned for his safety and attempted to obtain assistance. He expressed his concern about the threats and assaults he was experiencing to a number of the Jail staff in both oral and written complaints, some of which he filed as exhibits to this action. See Plaintiff's Motion for Summary Judgement [sic] (File Doc. # 22). He also complained directly to the chief deputy ("John Doe # 1") and Abdalla, one of whom told him that he "should expect [what he] was getting," given the charges levied against him. Furthermore, Wells asserts that some of the Jail staff may have encouraged the activity by affirmatively stating that they would not interfere in assaults directed at him. For example, Wells alleges to have overheard a conversation between a deputy known only to him as Deputy Ed ("John Doe # 2") and a fellow prisoner named "Spider." After one of the parties mentioned his name, the officer commented that, "As long as I don't see anything, I don't have to write a report." Complaint at ¶ 2.

Wells also attempted to have a third party contact the Jail on his behalf. At least one person spoke with either the chief deputy and Abdalla (or both) to inform them of the circumstances Wells faced, and, in his words, to let them know that "there was somebody on the outside of the jail who knew about the harassments and assaults." Complaint at ¶ 3. This attempted intervention was allegedly met with a cool response. Wells was told, by some unspecified party, that he should instruct his friend to stop contacting the Jail. Wells Depo. at 70–74. Finally, he also inquired whether he could be trans-

ferred back to the Tuscarawas County Jail. Abdalla responded that this was not an option to resolve his "little problem" because it was prohibitively expensive. See *id.*

Ventanze allegedly initiated a second assault on November 21, 1997. Wells bonded out of jail later that same day but quickly proceeded to trial on the charges facing him. He was convicted on December 17, 1997 for the rape of his three minor children. When he first returned to the Jail pending sentencing and reassignment, he was initially placed into the same cell with Ventanze. However, upon informing the officers of the history between the two, he was moved to a different cell block of the Jail. Some of the inmates occupying this cell, however, had also enjoyed some past altercations with Wells, and, on this evening, Hoberek, once of the occupants, assaulted Wells. During the ensuing struggle, Hoberek kicked Wells in the face, allegedly breaking his nose. Hoberek was immediately removed from the cell and placed in segregation for 10 days. Although no other assaults on Wells followed Hoberek's attack, Wells complains that he was left in the cell with the remainder of the "affending [sic] inmates" responsible for the attack until he was sentenced on December 24, 1997, causing him to be "constantly in fear of [sic][his] safety." Complaint at ¶ 4.

Following this assault, Wells complained of severe pain, declaring that his nose was broken and requesting medical assistance from both the attending corrections officers as well as one Nurse Crew. Wells maintains that his requests for medical care at the time of the injury elicited merely the production of a paper towel to clean his face. He also seems to complain that providing him with Tylenol or other over-the-counter medication was insufficient to treat his discomfort. Finally, he alleges that he has never received an x-ray of his nose to determine whether it was broken, or any other sort of diagnostic or therapeutic treatment for the injury. Wells contends that his failure to receive medical treatment was the result, at least in part, of a belief on Nurse Crew's part that he sought medical treatment only as a diversionary tactic and that he had no medical problems requiring treatment. Wells claims that he now suffers from a deviated septum as a result of the attack and subsequent deficient medical care which has caused him continuing medical problems, including a marked tendency to wake up at night due to breathing difficulties as well as more frequent occurrences of his migraine headaches.

Following sentencing and until he was transferred to the Lorain Correctional Facility on December 31, 1997, Wells was assigned to a separate cell he alleges was "obviously intended" to be used as a holding cell. Complaint at ¶ 5. This cell was immediately across from the guard station in the Jail and he was in full view of any guard working there. He claims that this cell was unsuitable for habitation, having no bed but rather only a mattress on the floor. He was also provided with a single blanket which he alleges insufficient to keep him warm in the cell during the month of December. Furthermore, the cell has cockroaches which climbed on him while he slept. Although the Jail was treating the problem with insecticides, Wells alleges that this treatment, in conjunction with the lack of a proper bed, created an additional problem with his cell. He was forced to sleep next to a drain in the floor which, presumably, was dirty and contaminated with pesticides. During the time he was kept in this cell, however, he was kept isolated from the other prisoners and suffered no further assaults.

Wells claims that a number of constitutional violations occurred during the

course of these incidents. He claims that his Eighth Amendment rights were violated when the officials at the Jail failed to protect him from the assaults he experienced and, by failing to remove him from the communal cell until December 24, 1997, subjected him to continuing danger at the hands of his fellow prisoners. He also claims that the conditions of the cell where he was detained between December 24 and 31, 1997, violated his Eighth Amendment rights. He asserts Eighth Amendment violations in the refusal of the medical staff to provide him with adequate medical care for his nose following the Hoberek assault. Finally, he claims an equal protection violation arising from these incidents. He seeks an order from the Court compelling surgical reconstruction of his nose at the defendants' expense, as well as punitive damages in the amount of $30,000 "collectively and separately" from the defendants. Complaint at 5.

### III.

■ 42 U.S.C. § 1983 provides a civil remedy to plaintiffs alleging various deprivations of their federal constitutional and statutory rights by persons acting under the color of state law. This Court has jurisdiction over the federal § 1983 claims under 28 U.S.C. §§ 1343(a)(3) and 1331. In order to state a *prima facie* case under 42 U.S.C. § 1983, plaintiff must satisfy two threshold requirements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Any allega-

tions must be clearly articulated; mere conclusory allegations are insufficient to state a claim under § 1983. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). The question before this Court is whether the § 1983 claims levied by the plaintiff can withstand the defendants' instant motion for summary judgment.

### IV.

Wells alleges a number of claims premised on the assault of December 17, 1997. He claims that his Eighth Amendment rights were violated when the defendants failed to protect him from Hoberek's assault, as well as when he was denied appropriate medical treatment immediately after the assault. Defendants have moved for summary judgment on the grounds that these actions are barred by the applicable statute of limitation. Defendants' motion will be granted.

■ The statute of limitations in Ohio for § 1983 actions is two years. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir.1989); *Friedman v. Estate of Presser*, 929 F.2d 1151, 1158 (6th Cir. 1991). Prisoner complaints are deemed to be filed when they are delivered to prison officials for forwarding. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). All parties concede that the complaint was delivered to prison officials no earlier than December 21, 1999. Because the above events occurred prior to December 21, 1997, they are barred by the statute of limitations and may not form the basis of any § 1983 action. Accordingly, defendants' motion for summary judgment as to all claims arising from these events is granted.

### V.

■ Wells alleges generally that his rights to equal protection secured by the

Fourteenth Amendment were violated by the treatment he received at the Jail. However, he fails to state the grounds for this claim with any specificity. Although the Court construes a *pro se* plaintiff's complaint and pleadings liberally, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), a plaintiff must allege with at least some particularity the defendant's overt acts which violated his constitutional rights. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). The Court will not speculate as to the possible bases for this claim. Without stating in any way how he was treated differently from similarly-situated prisoners, Wells's conclusory allegation that his equal protection rights were violated will simply not support a § 1983 claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971).

It should be noted that to the extent that Wells attempts to plead the failure to protect claim or failure to provide medical treatment claim as a due process claim, the Supreme Court conclusively established in *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) that the Eighth Amendment provides the sole analysis and remedy to be afforded prisoners for these types of constitutional violations:

> We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners.... Because this case involves prison inmates rather than pretrial detainees or persons enjoying unrestricted liberty we imply nothing as to the proper answer to that question outside the prison security context by holding, as we do, that in these circumstances the Due Process Clause affords respondent no greater protection than

does the Cruel and Unusual Punishments Clause.

*Whitley*, 475 U.S. at 327, 106 S.Ct. 1078. As pleaded, plaintiff's complaint simply fails to articulate any cognizable equal protection claim. Defendants' motion to dismiss any such claims is therefore granted.

## VI.

Wells articulates a number of Eighth Amendment violations arising from events occurring at the Jail between December 21, 1997 and December 31, 1997, including deliberate indifference on the part of the Jail staff to protect him from subsequent physical attacks, to provide him with an appropriate cell, and to provide him with appropriate medical care. Defendants have moved for summary judgment with respect to all such claims, and this motion will be granted.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. XIII. The Supreme Court has consistently held that claims relating to the conditions of a prisoner's confinement are subject to scrutiny under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 345–347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). However, recognizing that the Constitution "does not mandate comfortable prisons," *Rhodes* at 349, 101 S.Ct. 2392, and that prison conditions may be restrictive and even harsh, *Rhodes* at 347, 101 S.Ct. 2392, the Supreme Court has determined that only those actions which inflict wanton and unnecessary pain upon prisoners are actionable under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319–320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Although the deter-

mination of whether a violation occurred under either Wells's proposed theories involves evaluation of both objective and subjective components, *see, e.g., Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the appropriate analysis for each of his three Eighth Amendment claims differs slightly. Each will be addressed in turn.

### A.

Wells alleges that he was denied (and continues to be denied) medical treatment for the injuries he received in the Hoberek assault in violation of the Eighth Amendment. Defendants have moved this court for summary judgment in their favor as to these claims. Defendants' motion will be granted.

 Recognizing that the Eighth Amendment has been expanded to guard against violations of "the evolving standards of decency that mark the progress of a maturing society," the Supreme Court has held that the denial of medical care which serves no valid penological purpose may result in pain and suffering violative of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 102–103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958)). In order to prove such a violation, a plaintiff must first establish that the deprivation, viewed objectively, was sufficiently serious due to the fact that he or she was suffering from a serious medical condition which necessitated care. Second, the plaintiff must also demonstrate that those denying him treatment acted with deliberate indifference to his condition, thereby manifesting a subjectively culpable state of mind by acting so as to inflict the plaintiff with unnecessary pain. *See Estelle,* 429 U.S. at 104, 97 S.Ct. 285; *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Caldwell v. Moore,* 968 F.2d 595, 602 (6th Cir.1992). Establishing deliber-

ate indifference requires proving more than simple negligence demonstrated by the defendant's failure to act for the prisoner's interests or safety; rather, the prison official must both "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The official must, therefore, in failing to act, be aware of facts from which the official could determine that such a risk exists and then actually, subjectively, determine that such a risk exists. *See id.* Finally, as the test only seeks to impose liability on defendants who have acted unreasonably in the face of such a risk, those who actually knew of such a risk to inmate health or safety but responded reasonably to it are excused from liability, even if the harm ultimately resulted despite their efforts. *See id.* at 844, 114 S.Ct. 1970.

 As discussed *supra,* claims related to the denial of medical treatment immediately following Hoberek's assault (December 17, 1997 through December 20, 1997) are barred by the statute of limitations. As a result, the only medical conditions which may be considered are those that resulted from Wells's allegedly broken nose. According to Wells, his nose is "perpetually stuffed," and he also claims that it may be the cause for his migraine headaches becoming more frequent. Wells Depo. at 113–114. The Court assumes without deciding that these conditions are "serious medical conditions" requiring treatment.

Wells fails to name any of the medical staff at the Jail as defendants in the instant case. Wells concedes that he was examined numerous times by Nurse Crew at the Jail, and that, at least in some circumstances, these examinations were the result of requesting such examination from the jail staff. In substance, therefore, he makes no claim that the named

defendants denied him medical treatment between December 21, 1997 and December 31, 1997. Rather, he protests against the denial of the medical treatment he deems would have been appropriate, including X-rays and/or reconstructive surgery of his nose to straighten his deviated septum. Since none of the named defendants were allegedly responsible for denying him these specific medical treatments, he has no Eighth Amendment medical claim against them.

## B.

Wells's next claim is that his Eighth Amendment rights were violated because the Jail employees were deliberately indifferent to his safety at the Jail by failing to adequately protect him from his fellow prisoners.

■ Prisoners have a constitutional right to be protected from the violence of other prisoners while incarcerated:

Having incarcerated persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct [and] having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Farmer v. Brennan,* 511 U.S. 825, 833–834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(internal citations and quotation marks omitted). This circuit has long recognized this principle. *Wilson v. Yaklich,* 148 F.3d 596 (6th Cir.1998); *Street v. Corrections Corporation of America,* 102 F.3d 810 (6th Cir.1996); *Walker v. Norris,* 917 F.2d 1449, 1453 (6th Cir.1990); *Roland v. Johnson,* 856 F.2d 764, 769–70 (6th Cir.1988); *McGhee v. Foltz,* 852 F.2d 876, 880–81 (6th Cir.1988). However, guards breach consti-

tutional rights only when they fail to take reasonable measures to protect inmates against substantial risks of serious harm of which they have knowledge. *Farmer,* 511 U.S. at 837–838, 114 S.Ct. 1970; *Street,* 102 F.3d at 814–815.

■ Wells's failure-to-protect claim fails for a number of reasons. First, Wells fails to plead that he suffered any physical injury as a result of the Jail staff's failure to protect him subsequent to December 21, 1997. 42 U.S.C. § 1997e, which establishes various procedures and prerequisites which must be satisfied before prisoners may bring civil suits in federal court, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). All of the physical confrontations Wells had with other inmates, including Hoberek's assault, occurred outside the limitations period. In requesting relief for the fear he was forced to endure as a result of the Jail staff's failure to adequately protect him by confining him with the other prisoners, Wells fails to allege that he experienced any physical injury as a result. Accordingly, Wells's pleading of his Eighth Amendment failure-to-protect claim is fatally defective.

Furthermore, even if the § 1997e(e) threshold was satisfied, Wells's claim is substantively deficient. Assuming, *arguendo,* that the Jail staff's knowledge of the prior assault and threats could be inferred by a finder of fact to confer actual knowledge of a substantial threat to Wells, *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970, Wells bases this entire cause of action on the premise that the decision of the Jail staff to leave him in the cell in which Hoberek attacked him for three additional days following the assault was patently

unreasonable. The facts, however, indicate otherwise. Wells suffered no further assaults during this time period, and he does not even allege that he was threatened by any prisoners sharing the cell during this time. Absent any assault on him, Wells's Eighth Amendment failure-to-protect claim has no substance. *Wilson v. Yaklich,* 148 F.3d 596, 600–602 (6th Cir.1998)("However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.")

In the instant case, the reaction of the Jail staff to the threat of assault on Wells served to protect him from further assault. He suffered no physical injury as a result of the officials' treatment. Accordingly, Wells has no viable claim under the Eighth Amendment for his alleged fear of an assault from December 21 to 24, 1997.

### C.

The remainder of Wells's Eighth Amendment claims involve the conditions of the cell where he resided from December 24, 1997 to December 31, 1997. He asserts that the cell was unfit for habitation in violation of his constitutional rights.

■■■ This circuit refuses to conduct a totality of the circumstances analysis in Eighth Amendment cases. See *Thompson v. County of Medina,* 29 F.3d 238, 242 (6th Cir.1994); *Walker v. Mintzes,* 771 F.2d 920, 925–26 (6th Cir.1985). Wells must demonstrate that at least one of the conditions of confinement, in and of itself, violates the Eighth Amendment. A narrow exception to the principle exists in circumstances when some conditions, when viewed together, have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson,* 501

U.S. at 304, 111 S.Ct. 2321; *Thompson,* 29 F.3d at 242.

■■■ There is nothing in the record to suggest that Wells suffered any physical harm as a result of the conditions of the holding cell, and 42 U.S.C. § 1997e(e) would appear to preclude this claim. Even if he had suffered some kind of physical injury, however, his claim would fail. Wells admits that he did not complain to any of the guards that the holding cell was uncomfortable or unsanitary. Wells Depo. at 107–109. Wells also concedes that the Jail was being treated for its insect problem. Finally, any attempt to characterize Wells's claim for exposure to pesticides as similar to *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)(Eighth Amendment claim could be stated by prisoner alleging that exposure to cigarette smoke from his cellmate caused future health risks) is deficient. Assuming, *arguendo,* that his allegations are sufficient to raise a question of fact as to whether he was actually exposed to any pesticides, he fails to allege either that the levels of pesticides posed an unreasonable risk to his health or that the exposure violated any contemporary standards of decency. *See id* at 35–36, 113 S.Ct. 2475; *Culliver v. Corrections Corporation of America,* 211 F.3d 1268, 2000 WL 554078 at *1 (6th Cir.2000). Finally, having to sleep on a mattress on the floor or being exposed to cold temperatures simply do not rise to the level of a constitutional violation. *Dean v. Campbell,* 156 F.3d 1229, 1998 WL 466137 (6th Cir.1998)(cold); *Jones v. Toombs,* 77 F.3d 482, 1996 WL 67750 (6th Cir.1996)(mattress); *Cook v. Mohr,* 897 F.2d 529, 1990 WL 25062 (6th Cir.1990)(cold and mattress). As a result, Wells's claim for relief premised on the conditions of his cell, viewed in a light most favorable to him, necessarily fails. Defendants' motion for summary judgment

with respect to this claim is therefore granted.

### VII.

Wells asserted his claims against the Jefferson County Sheriff's Department as well as the individual defendants. The defendants have all moved for summary judgment on the grounds that § 1983 liability may not be premised solely on the theory of *respondeat superior.* In *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court conclusively established this assertion, declaring that a defendant must first have been directly involved in the alleged constitutional violation before he can be held liable under § 1983. *See Monell,* 436 U.S. at 691, 98 S.Ct. 2018.

Without reaching the merits of the *Monell* issue, the Court's conclusion that all of Wells's claims are either barred by the statute of limitations or are without merit precludes holding the Sheriff's Department liable under § 1983.

### VIII.

For the reasons detailed above, defendants' motion for summary judgment on all claims is **GRANTED.** Accordingly, the Court **DISMISSES** all other motions as moot. This case is **DISMISSED WITH PREJUDICE.** The Clerk is directed to enter judgment in favor of the defendants.